IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| COACH, INC. and<br>COACH SERVICES, INC., | § § § | |
| Plaintiffs | § § | |
| VS. | § § | CV-NO: 4:16-cv-3150 |
| TRENDY TEXAS, LLC, BAIG<br>MAHMOOD, AN INDIVIDUAL AND<br>MIRZA MOHAMMAD DAWOOD BAIG, | § § § § | |
| Defendants. | § | |

## PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
## AND PERMANENT INJUNCTION AGAINST TRENDY TEXAS, LLC

Under Federal Rule of Civil Procedure 55(b), Plaintiffs Coach, Inc. and Coach Services, Inc. (collectively "Plaintiffs") move for a Default Judgment, including statutory damages, attorney's fees, and the issuance of a Permanent Injunction, against Defendant Trendy Texas, Inc. ("Trendy Texas").

### I.    SUMMARY OF GROUNDS FOR THIS MOTION

On April 12, 2017, Plaintiffs Coach, Inc. and Coach Services, Inc. filed their First Amended Complaint ("Amended Complaint") in this lawsuit after confirming that Defendant Trendy Texas, Inc. ("Trendy Texas") engaged in unauthorized duplication, importation, manufacturing, distribution and sale of purportedly Coach trademarked products.

On May 10, 2017, Plaintiffs personally served Trendy Texas with Plaintiffs' First Amended Complaint but Trendy Texas failed to respond to the Amended Complaint filed and served against it in the time prescribed by the Federal Rules of Civil Procedure.

Trendy Texas is a Texas limited liability company, and as such, is not an infant or incompetent person or in military service or otherwise exempt under the Soldiers' and Sailors' Civil Relief Act of 1940;

Now, Plaintiffs move for a Default Judgment holding Trendy Texas liable on each of Plaintiffs' claims for copyright infringement, trademark infringement, trademark counterfeiting, unfair competition, and unjust enrichment. Plaintiffs seek an award of maximum statutory damages for Defendants' infringement of the copyrights and trademarks alleged in the Amended Complaint, plus attorney's fees. Plaintiffs also request the entry of a permanent injunction to prevent Trendy Texas from infringing Plaintiffs' copyrights and trademarks in the future.

## II.   STATEMENT OF FACTS

### Background of Plaintiffs' Business

Plaintiff Coach Services, Inc. is a Maryland corporation with its principal place of business in Jacksonville, Florida. Plaintiff Coach, Inc. is a Maryland corporation with its principal place of business in New York, NY. Amended Complaint ¶ 5, 6. Among other things, Plaintiff Coach, Inc. is in the business of manufacturing, marketing, and selling fine leather and mixed material products including but not limited to, handbags, wallets, accessories, eyewear, footwear, clothing, outerwear, jewelry and watches (collectively, "Coach Products"). Amended Complaint ¶ 11.

Coach Products have become enormously popular and even iconic, driven by Coach's arduous quality standards and innovative designs. Among the purchasing public, genuine Coach Products are instantly recognizable as such.

Both in the United States and internationally, the Coach brand has come to symbolize high quality, and Coach Products are among the most recognizable handbags and accessories in

AUS:0104637/00028:706508v1

the world. Whether made entirely of leather or in combination with printed or other components, genuine Coach Products are greatly coveted as premier fashion accessories of the highest quality.

The unique mix of function, workmanship, fashion and style that goes into each and every genuine Coach Product, as well as the brand's exclusive cache, results in Coach Products commanding a relatively high price at retail. Coach's loyal customer base willingly pays more for genuine Coach Products than they would pay for lesser products both because Coach Products are of higher quality and durability than competitors' and because of the prestige associated with genuine Coach Products. Coach is the exclusive distributor of Coach Products.

### The Coach Trademarks

Coach owns the trademark and trade name "COACH" for the Coach Products, as well as numerous other highly distinctive marks, including those pictured here:



the "Signature C Mark"        the "COACH Lozenge"        the "Op Art C Mark"

the "Horse and Carriage Logo"        collectively, the "StoryPatch"

Coach incorporates a variety of distinctive marks in the design of its various handbags, purses and other Coach Products. Coach Products typically include at least one of Coach's federally registered trademarks. Often several of Coach's trademarks appear on a single Coach

AUS:0104637/00028:706508v1

Product. Coach also uses these trademarks in connection with the marketing of its Coach Products. Coach and its predecessors have achieved annual sales volume of more than four billion dollars ($4,000,000,000) on products bearing Coach's trademarks. As such, Coach's trademarks, and the goodwill associated therewith, are among Coach's most valuable assets.

In compliance with the provisions of the Lanham Act, Coach has registered many of its trademarks with the United States Patent and Trademark Office, including, *inter alia*, the following marks, which are collectively referred to as the "Coach Trademarks":

| Registration No. | Mark | Classes, Goods and Services | Date of Registration | Image |
|---|---|---|---|---|
| 2,088,706 | COACH | 6, 9, 16, 18, 20 and 25 for *inter alia* key fobs, eyeglass cases, cellular phone cases satchels, tags for luggage, luggage, backpacks, picture frames, hats, gloves and caps. | August 19, 1997 | COACH |
| 3,157,972 | COACH | 35 for retail store services. | October 17, 2006 | COACH |
| 751,493 | COACH | 14 for Leather Goods, namely, Utility Kits, Portfolios, Key Cases, Pass Cases, Billfolds, Wallets, Pocket Secretaries. | June 23, 1963 | COACH |
| 2,451,168 | COACH | 9 for eyeglasses. | May 15, 2001 | COACH |
| 4,105,689 | COACH | 9 for sunglasses. | February 25, 2012 | COACH |
| 2,537,004 | COACH | 24 for *inter alia* home furnishings. | February 5, 2002 | COACH |
| 1,846,801 | COACH | 25 for men's and women's coats and jackets. | July 26, 1994 | COACH |
| 3,439,871 | COACH | 18 for umbrellas. | June 3, 2008 | COACH |

-4-

| Registration No. | Mark | Classes, Goods and Services | Date of Registration | Image |
|---|---|---|---|---|
| 2,231,001 | COACH | 25 for clothing for men, women, namely, coats, jackets, overcoats, raincoats, shirts, vests, scarves, shoes and belts. | March 9, 1999 | COACH |
| 3,354,448 | COACH | 14 for *inter alia* jewelry. | December 11, 2007 | COACH |
| 2,446,607 | COACH | 16 for *inter alia* writing instruments. | April 24, 2001 | COACH |
| 2,291,341 | COACH | 14 for watches. | November 9, 1999 | COACH |
| 1,071,000 | COACH | 18, 25 for *inter alia* women's handbags and men's and women's belts. | August 9, 1977 | COACH |
| 3,633,302 | COACH | 3 for *inter alia* perfumes, lotions and body sprays. | June 2, 2009 | COACH |
| 4,168,626 | COACH NEW YORK | 18, 25 for *inter alia* briefcases, satchels, tote bags, duffle bags, key cases, coin cases, wallets, hats, caps, gloves, coats, jackets, overcoats, raincoats, scarves, shoes and belts. | July 3, 2012 | COACH NEW YORK |
| 4,296,584 | COACH NEW YORK | 9, 16 for cases for eyeglasses and sunglasses, sunglasses and spectacles, calendars and diaries. | February 26, 2013 | COACH NEW YORK |
| 3,413,536 | COACH EST. 1941 Stylized | 14 for *inter alia* jewelry | April 15, 2008 | *Coach est. 1941* |
| 5,004,497 | COACH 1941 | 18, 25 for *inter alia* handbags, small leather goods, jackets, clothing, coats and | July 19, 2016 | COACH 1941 |

AUS:0104637/00028:706508v1

| Registration No. | Mark | Classes, Goods and Services | Date of Registration | Image |
|---|---|---|---|---|
| | | shoes | | |
| 2,534,429 | COACH & Lozenge Design | 9 for eyeglasses, eyeglass frames, and sunglasses. | January 29, 2002 | COACH |
| 3,363,873 | COACH & Lozenge Design | 3 for *inter alia* fragrances. | January 1, 2008 | COACH |
| 2,252,847 | COACH & Lozenge Design | 35 for retail services. | June 15, 1999 | COACH |
| 2,291,368 | COACH & Lozenge Design | 14 for *inter alia* watches. | November 9, 1999 | COACH |
| 2,534,429 | COACH & Lozenge Design | 9 for eyeglasses, eyeglass frames and sunglasses. | January 29, 2002 | COACH |
| 2,169,808 | COACH & Lozenge Design | 25 for *inter alia* clothing for men and women, namely, coats, jackets, scarves, shoes, and belts. | June 30, 1998 | COACH |
| 2,045,676 | COACH & Lozenge Design | 6, 9, 16, 18, 20, 25 for *inter alia* key fobs, money clips, phone cases, computer cases, briefcases, satchels, duffel bags, hats, caps and gloves. | March 18, 1997 | COACH |
| 1,070,999 | COACH & Lozenge Design | 18, 25 for *inter alia* women's handbags and men's and women's belts. | August 9, 1977 | COACH |
| 1,309,779 | COACH & Lozenge Design | 9, 16, 18 for *inter alia* eyeglass cases and leather goods, namely, wallets, purses and shoulder bags. | December 19, 1984 | COACH |
| 2,035,056 | COACH & Lozenge Design | 3, 21 for *inter alia* leather cleaning products and shoe | February 4, 1997 | COACH |

-6-

| Registration No. | Mark | Classes, Goods and Services | Date of Registration | Image |
|---|---|---|---|---|
| | | brushes. | | |
| 2,626,565 | CC & Design (Signature C) | 18 for *inter alia* handbags, purses, clutches, shoulder bags, tote bags, and wallets. | September 24, 2002 | |
| 2,822,318 | CC & Design (Signature C) | 24 for fabric for use in the manufacture of clothing, shoes, handbags, and luggage. | March 16, 2004 | |
| 2,832,589 | CC & Design (Signature C) | 6, 9, 14, 18, for *inter alia* sunglasses and eyeglass cases, metal key fobs, leather key fobs, jewelry, watches, umbrellas. | April 13, 2004 | |
| 2,592,963 | CC & Design (Signature C) | 25 for *inter alia* clothing namely, scarves, belts, gloves, hats, shoes, coats, jackets. | July 9, 2002 | |
| 2,822,629 | CC & Design (Signature C) | 35 for retail services. | March 16, 2004 | |
| 4,365,898 | COACH Signature C & Design | 9 for protective covers and cases for cell phones, laptops and portable media players. | July 9, 2013 | |
| 3,396,554 | AMENDED CC & Design (Signature C) | 3 for fragrances. | March 11, 2008 | |
| 3,784,814 | COACH OP ART & Design | 9 for *inter alia* eyeglasses and sunglasses. | May 4, 2010 | |

AUS:0104637/00028:706508v1

| Registration No. | Mark | Classes, Goods and Services | Date of Registration | Image |
|---|---|---|---|---|
| 4,365,899 | COACH OP ART & Design | 9 for protective covers and cases for cell phones, laptops and portable media players. | July 9, 2013 |  |
| 4,105,636 | COACH OP ART & Design | 14, 18, 25 for jewelry, watches, wallets, handbags, belts, hats, scarves, shoes, coats, gloves and t-shirts. | February 28, 2012 |  |
| 4,391,741 | COACH LEATHERWARE EST. 1941 & Design | 3 for after-shave, body lotions, fragrances, make-up, perfumes, soaps for personal use. | August 27, 2013 |  |
| 4,296,582 | COACH EST. 1941 NEW YORK & Design | 14,16,18 and 25 for *inter alia* jewelry and watches, handbags, leather credit card cases, purses, shoulder bags, wallets, belts, coats, t-shirts, hats, gloves, shoes, day planners. | February 26, 2013 |  |
| 4,359,191 | COACH EST. 1941 NEW YORK & Design | 9 for protective covers and cases for cell phones, laptops and portable media players. | June 25, 2013 |  |
| 3,251,315 | COACH EST. 1941 & Design | 18, 25 for *inter alia* handbags, small leather goods, jackets, coats and shoes. | June 12, 2007 |  |
| 3,338,048 | COACH & Design | 18 for *inter alia* luggage, backpacks, purses, wallets, and shoulder bags. | November 11, 2007 |  |

AUS:0104637/00028:706508v1

| Registration No. | Mark | Classes, Goods and Services | Date of Registration | Image |
|---|---|---|---|---|
| 3,149,330 | C & Lozenge Logo | 14 for watches. | September 26, 2006 | |
| 2,162,303 | COACH & Tag Design | 25 for belts. | June 2, 1998 | |
| 4,334,351 | COACH & Tag Design | 9 for protective covers and cases for cell phones, laptops and portable media players. | May 14, 2013 | |
| 3,685,590 | COACH & Tag Design | 14 for bracelets, earrings, jewelry, necklaces, rings being jewelry, watches. | September 22, 2009 | |
| 2,088,707 | COACH & Tag Design | 18 for *inter alia* briefcases, handbags, satchels, tote bags, duffle bags, cosmetic bags, luggage. | August 19, 1997 | |
| 5,045,622 | HANGTAG SHAPE DESIGN | 18 for *inter alia* briefcases, handbags, satchels, tote bags, duffle bags, cosmetic bags, wallets, luggage | September 20, 2016 | |
| 4,744,715 | COACH NEW YORK & Design | 18 for handbags; purses; tote bags; clutch purses; wristlet bags; shoulder bags; messenger bags; duffle bags; backpacks; briefcases; travel bags; luggage; garment bags for travel; bags for carrying babies' accessories; wallets; billfolds; luggage tags; cosmetic cases sold empty; toiletry cases | May 26, 2015 | |

| Registration No. | Mark | Classes, Goods and Services | Date of Registration | Image |
|---|---|---|---|---|
| | | sold empty; key cases and wallets; business card cases; credit card cases; coin purses; umbrellas; pet collars and leashes; and leather boxes. | | |
| 4,744,716 | COACH NEW YORK & Design | 16 for notebooks; address books; daily planners; diaries; paper refills for notebooks, address books, daily planners, diaries, and calendars; paper weights; desk file trays; bookmarks; pencil cases; checkbook covers; money clips; paper shopping bags; boxes of paper or cardboard; paper holders for receipts; and tissue paper. | May 26, 2015 | COACH NEW YORK |
| 4,744,718 | COACH NEW YORK & Design | 25 for clothing, namely, coats, jackets, overcoats, raincoats, vests, parkas, capes, blouses, shirts, t-shirts, tank tops, tunics, sweaters, sweatshirts, skirts, pants, dresses, scarves, swimwear; belts; gloves; hats; and footwear. | May 26, 2015 | COACH NEW YORK |
| 4,744,719 | COACH NEW YORK & Design | 3 for fragrances; aftershaves; colognes; leather cleaning and moisturizing preparations; and fabric cleaners. | May 26, 2015 | COACH NEW YORK |

AUS:0104637/00028:706508v1

| Registration No. | Mark | Classes, Goods and Services | Date of Registration | Image |
|---|---|---|---|---|
| 4,744,720 | COACH NEW YORK & Design | 9 for sunglasses; eyeglasses; optical frames; cases for eyeglasses and sunglasses; adapter plugs; cell phone cases; cell phone covers; carrying cases for cell phones; protective covers and cases for tablet computers; and mouse pads. | May 26, 2015 |  |
| 4,744,721 | COACH NEW YORK & Design | 14 for watches; jewelry; and ornamental pins. | May 26, 2015 |  |
| 4,814,094 | COACH NEW YORK & Design | 18 for handbags; purses; tote bags; clutch purses; wristlet bags; shoulder bags; messenger bags; duffle bags; backpacks; briefcases; travel bags; luggage; garment bags for travel; bags for carrying babies' accessories; cosmetic cases sold empty; and toiletry cases sold empty. | September 15, 2015 |  |
| 4,754,870 | COACH NEW YORK | 3, 6 for fragrances; key fobs of common metal; and metal rings and chains for keys. | June 16, 2015 | COACH NEW YORK |

The registrations for these Coach Trademarks are valid, subsisting, in full force and effect and have become incontestable pursuant to 15 U.S.C. § 1065. All registrations originally held in

the name of Coach's predecessors, Sara Lee Corporation and Saramar Corporation, were assigned in full to Coach on or about October 2, 2000.

The Coach Trademarks at issue in this case have been continuously used and have never been abandoned. The Trademarks at issue are the following:

| Registration No. | Mark | Classes, Goods and Services | Date of Registration | Image |
|---|---|---|---|---|
| 4,105,689 | COACH | 9 for sunglasses. | February 25, 2012 | COACH |
| 3,413,536 | COACH EST. 1941 Stylized | 14 for *inter alia* jewelry | April 15, 2008 | *Coach est.1941* |
| 2,534,429 | COACH & Lozenge Design | 9 for eyeglasses, eyeglass frames, and sunglasses. | January 29, 2002 | COACH |
| 2,045,676 | COACH & Lozenge Design | 6, 9, 16, 18, 20, 25 for *inter alia* key fobs, money clips, phone cases, computer cases, briefcases, satchels, duffel bags, hats, caps and gloves. | March 18, 1997 | COACH |
| 2,626,565 | CC & Design (Signature C) | 18 for *inter alia* handbags, purses, clutches, shoulder bags, tote bags, and wallets. | September 24, 2002 | |
| 2,822,318 | CC & Design (Signature C) | 24 for fabric for use in the manufacture of clothing, shoes, handbags, and luggage. | March 16, 2004 | |
| 2,832,589 | CC & Design (Signature C) | 6, 9, 14, 18, for *inter alia* sunglasses and eyeglass cases, metal key fobs, leather key fobs, jewelry, watches, umbrellas. | April 13, 2004 | |

AUS:0104637/00028:706508v1

| Registration No. | Mark | Classes, Goods and Services | Date of Registration | Image |
|---|---|---|---|---|
| 2,592,963 | CC & Design (Signature C) | 25 for *inter alia* clothing namely, scarves, belts, gloves, hats, shoes, coats, jackets. | July 9, 2002 |  |
| 4,391,741 | COACH LEATHERWARE EST. 1941 & Design | 3 for after-shave, body lotions, fragrances, make-up, perfumes, soaps for personal use. | August 27, 2013 |  |
| 2,045,676 | COACH & Lozenge Design | 6, 9, 16, 18, 20, 25 for *inter alia* key fobs, money clips, phone cases, computer cases, briefcases, satchels, duffel bags, hats, caps and gloves. | March 18, 1997 |  |
| 4,296,582 | COACH EST. 1941 NEW YORK & Design | 14,16,18 and 25 for *inter alia* jewelry and watches, handbags, leather credit card cases, purses, shoulder bags, wallets, belts, coats, t-shirts, hats, gloves, shoes, day planners. | February 26, 2013 |  |
| 4,359,191 | COACH EST. 1941 NEW YORK & Design | 9 for protective covers and cases for cell phones, laptops and portable media players. | June 25, 2013 |  |

The registration of the Coach Trademarks constitutes *prima facie* evidence of their validity and conclusive evidence of Coach's exclusive right to use the Coach Trademarks in connection with the goods identified therein and on other commercial goods.

The registration of the Coach Trademarks also provides sufficient notice to Trendy Texas of Coach's ownership of and exclusive rights in the Coach Trademarks.

AUS:0104637/00028:706508v1

The Coach Trademarks qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1).

## The Coach Copyrights

Many of the decorative and artistic combinations of the design elements present on Coach Products are independently protected works under the United States Copyright Laws. These design elements are wholly original works and are fixed in various tangible products and media, thereby qualifying as copyrightable subject matter under the United States Copyright Act, 17 U.S.C. Sections 101 et seq. (hereinafter referred to as the "Coach Design Elements").

In additional to others, Coach has a valid copyright registered with the Copyright Office for its "Legacy Stripe" design (registration number VA000704542), "Signature C" design (registration number VA0001228917), "Op Art" design (registration number VA0001694574) and "Horse & Carriage" design (registration number VA0001714051).

At all times relevant hereto, Coach has been the sole owner and proprietor of all rights, title, and interest in and to the copyrights in the Coach Design Elements used on Coach Products, and such copyrights are valid, subsisting and in full force and effect.

## Trendy Texas's Unlawful Conduct

Based upon information and belief, Trendy Texas is engaged in designing, manufacturing, advertising, promoting, distributing, selling, and/or offering for sale products bearing logos and source-identifying indicia and design elements that are studied imitations of the Coach Trademarks (hereinafter referred to as the "Infringing Products"). Trendy Texas's specific conduct includes, among other things, supplying the other parties to this lawsuit with counterfeit Coach trademarked merchandise, which was subsequently displayed for sale. On or about August 10, 2016, undercover officers from the Houston Police Department entered Trendy Texas's location at 7171 Harwin Drive, Suite 103, Houston, Texas on suspicion of counterfeit

-14-

merchandise. The officers purchased several allegedly counterfeit items that were displayed for sale. After confirming with investigators working on Coach's behalf that the items were counterfeit, Houston police officers re-entered the location with a search warrant and seized all counterfeit merchandise including the following 371 purportedly Coach trademarked items – 239 labels, 44 belts, 33 keychains, 21 pairs of earrings, 15 pairs of sunglasses, seven bracelets, six necklaces, four handbags, and two wallets. Based on training and experience, venue, price point, lack of legitimate hangtags as well as overall quality of the materials, the investigators determined the seized items were counterfeit and infringed on Coach's intellectual property.

Trendy Texas is well aware of the extraordinary fame and strength of the Coach Brand, the Coach Trademarks, the Coach Trade Dresses, Coach Copyrights, and the Coach Design Elements, and the incalculable goodwill associated therewith.

Trendy Texas has no license, authority, or other permission from Coach to use any of the Coach Trademarks, the Coach Trade Dresses, Coach Copyrights or the Coach Design Elements in connection with the designing, manufacturing, advertising, promoting, distributing, selling, and/or offering for sale of the Infringing Products.

Trendy Texas has been engaging in the above-described illegal counterfeiting and infringing activities negligently and/or knowingly and intentionally, with reckless disregard or willful blindness to Coach's rights, or with bad faith, for the purpose of trading on the goodwill and reputation of the Coach Trademarks and Coach Products.

Trendy Texas's activities, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the Infringing Products and Coach.

AUS:0104637/00028:706508v1

Plaintiffs are entitled to recover from Trendy Texas the damages sustained by Plaintiffs as a result of Trendy Texas's acts of copyright and trademark infringement, together with Trendy Texas's profits, the statutory damages provided by both the Copyright Act and the Lanham Act, Plaintiffs' counsel fees and the costs of this action. Plaintiffs are not yet able to ascertain the full extent of the gains, profits and advantages Trendy Texas has obtained and will continue to obtain, or the damages Plaintiffs have suffered and will continue to suffer, by reason of Trendy Texas's unlawful acts of infringement (collectively "Plaintiffs' Damages").

Trendy Texas's conduct constituted an infringement of Plaintiffs' intellectual property rights. In light of Trendy Texas's infringing conduct, on October 25, 2016, Plaintiffs filed their Complaint for copyright infringement, trademark infringement, unjust enrichment, and unfair competition, requesting damages, the entry of a permanent injunction, attorney's fees, and costs. On April 12, 2017, Plaintiffs filed their Amended Complaint against Trendy Texas LLC re-asserting their claims. Plaintiffs served their Amended Complaint upon Trendy Texas on May 10, 2017, as evidenced by the Return of Service on file with this Court. Trendy Texas failed to file an answer or other response to the Complaint within the time allowed by law under Rule 12 of the Federal Rules of Civil Procedure. Now, Plaintiffs move for a Default Judgment against Trendy Texas.

## III.     SUMMARY OF ISSUES AND STANDARD OF REVIEW

This is a straightforward Motion for Default Judgment. Despite having been served with Plaintiffs' Amended Complaint, Trendy Texas has elected to ignore this lawsuit and has failed to file an answer or otherwise appear. The Court should grant this Motion, and the standard of review for that ruling is an abuse of discretion standard. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977), See also *Ganter v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).

AUS:0104637/00028:706508v1

## IV.  SUMMARY OF THE LEGAL ARGUMENT

Because Trendy Texas failed to file an answer or otherwise appear, the allegations in Plaintiffs' pleadings are deemed admitted as a matter of law.  Likewise, the entry of default was appropriate, and a default judgment is appropriate because of Trendy Texas's failure to answer or otherwise defend against the allegations contained in the pleadings.

Under The Copyright Act and The Lanham Act, Trendy Texas's deemed admissions entitle Plaintiffs to statutory damages.  Because the Amended Complaint alleges that Trendy Texas infringed willfully, Trendy Texas's deemed admissions entitle Plaintiffs to statutory damages that the Court may increase due to Trendy Texas's willfulness.  Plaintiffs will seek those damages in the future under a separate motion if the Court grants this Motion.

In addition to those statutory damages, Plaintiffs will also seek their attorney's fees and costs, but at this time Plaintiffs are seeking only a permanent injunction prohibiting Trendy Texas's future infringement of Plaintiffs' trademarks and copyrights.

## V.  LEGAL ARGUMENT

**A.  The Allegations Of the Complaint Are Deemed Admitted Upon Entry Of Default, and Plaintiffs Are Therefore Entitled To Judgment Against The Defaulting Defendants on Each of Their Claims for Relief.**

1.  <u>Default Judgment Is Appropriate Because Trendy Texas Failed To Plead Or Otherwise Defend As Required By The Federal Rules Of Civil Procedure</u>.

When a claim is not for a sum certain, "the party entitled to a judgment by default shall apply to the court therefor." FED. R. CIV. P. 55(b)(2).  Because Plaintiffs' claim is not for a sum certain, it hereby moves for a Default Judgment against Trendy Texas.

This case satisfies the conditions contained in Rule 55(b)(2) for default judgment. Trendy Texas does not belong to any category of persons entitled to heightened protection under Federal Rule of Civil Procedure 55(b)(2).  Trendy Texas is a Texas limited liability company and

AUS:0104637/00028:706508v1

therefore is not an infant or incompetent person, and the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply. *See* Declaration of John R. Nelson filed concurrently with this Motion. Thus, Plaintiffs have complied with all prerequisites to a Default Judgment, and judgment in the amount requested by Plaintiffs are appropriate.

   2.   The Factual Allegations Of Plaintiffs' Amended Complaint Are Deemed Admitted.

Upon the entry of default, the factual allegations of a complaint, except those relating to the amount of damages, should be taken as true. *See, e.g., Nishimatsu Const. Co., Ltd. v. Houston Natl. Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975) ("[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"); *Caterpillar Fin. Servs. Corp. v. Lindsey,* 218 F.R.D. 145, 148 (S.D. Tex. 2003). Ordinarily, the default itself also establishes a Defendant's liability. *See Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.,* 722 F.2d 1319, 1323 (7th Cir. 1983) ("[u]pon default, the well-pleaded allegations of the complaint relating to liability are taken as true").

As set forth above, the Plaintiffs' Amended Complaint contains well-pleaded charges of Trendy Texas's copyright infringement, trademark infringement, false designation of origin, and unfair competition. Therefore, Plaintiffs are entitled to a finding of liability against Trendy Texas on each of its claims.

   3.   Plaintiffs Are Entitled To Recover Statutory Damages Under Both The Copyright Act And The Lanham Act.

Both the Copyright Act and the Lanham Act allow a successful plaintiff to elect to recover an award of specified statutory damages. A copyright owner may elect, at any time before final judgment is rendered, to recover "instead of actual damages and profits, an award of statutory damages for all infringements involved in the action." 17 U.S.C. § 504(c)(1). The Copyright Act authorizes statutory damages of up to $30,000 per copyright infringed, enhanced

-18-

up to $150,000 per copyright if the infringement is willful. 17 U.S.C. § 504(c). Similarly, in cases involving use of a counterfeit mark, a trademark owner, may elect, at any time before final judgment is rendered, to recover an award of statutory damages of up to $100,000 per counterfeit trademark infringed, enhanced to up to $2,000,000 per mark if the infringement is willful. 15 U.S.C. § 1117(c). The Court has broad discretion in determining the amount of statutory damages to be awarded. *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1304 (5th Cir. 1997) ("[g]reat latitude is given the district court in awarding damages under the Lanham Act, 'which expressly confers upon the district judges wide discretion in determining a just amount or recovery for trademark infringement."); *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 n.3 (9th Cir. 1990), *cert. denied*, 498 U.S. 1109 (1991), *quoting Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) (maximum statutory damages awarded).

A successful plaintiff is entitled to recover a separate award of statutory damages under both statutes when a defendant has infringed both its trademarks and copyrights, even when the infringements are caused by a single act. Separate awards are appropriate because the Lanham Act and the Copyright Act serve different public policies, and protect against and remedy two distinct injuries. *See, e.g.*, *Nintendo of America, Inc. v. Dragon Pacific International*, 40 F.3d 1007, 1011 (9th Cir. 1994) (a defendant commits "two wrongs" when his actions violate both the Copyright Act and the Lanham Act; to "effectuate the purposes of both statutes, damages may be awarded under both"), *aff'd*, 55 F.3d 281 (9th Cir. 1995)

Because Trendy Texas's conduct violated both the Copyright Act and the Lanham Act, and because Trendy Texas failed to defend or even respond to Plaintiffs allegations making it difficult to do discovery related to actual damages, Plaintiffs hereby exercise their right to elect

statutory damages under the Lanham Act and the Copyright Act. *See Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F.Supp. 2d 161 (S.D.N.Y. 1999) (awarding statutory damages under the Lanham Act as part of default judgment against defendant).

    4.   <u>Trendy Texas Willfully Infringed Plaintiffs' Copyrights and Trademarks</u>.

In other analogous infringement actions, courts have inferred willfulness from a defendant's failure to defend. *See Fallaci v. New Gazette Literacy Corp.*, 568 F.Supp. 1172, 1173 (S.D.N.Y. 1983); <u>see also</u> *Fitzgerald Publishing Co. v. Baylor Publishing Co.*, 807 F.2d 1110 (2d Cir. 1986); *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003) (finding defendant willfully infringed plaintiff's trademark based on plaintiff's allegations of willful infringement and defendant's "failure to comply with the judicial process or to participate in any way in the present litigation"). Therefore, under the circumstances of this case, it is entirely appropriate for the Court to find that Trendy Texas's infringement of Plaintiffs' trademarks and copyrights was willful.

The Court need not rely on this inference, however, to find Trendy Texas's behavior willful. An infringement is willful under the Copyright Act if the defendant had knowledge that its conduct was infringing or the defendant acted with reckless disregard for the copyright holder's rights. *Sega Enters. v. MAPHIA*, 948 F.Supp. 923, 936 (N.D. Cal. 1996). "Knowledge of infringement may be constructive rather than actual; that is, 'it need not be proven directly but may be inferred from the Defendants' conduct.' . . . '[R]eckless disregard of the copyright holder's rights . . . suffices. . .'" *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1010-11 (2d Cir. 1995) (quoting *N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252 (2d Cir.1992); *Sega Enters.*, 948 F.Supp. at 936.

AUS:0104637/00028:706508v1

Similarly, in Lanham Act cases, an infringement is willful where the defendant acted with "willful blindness" to the trademark holder's rights. 15 U.S.C. §1117(b); *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989) ("willful blindness is knowledge enough") (citing Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. at H12076-77); *Microsoft Corporation v. Grey Computer,* 910 F.Supp. 1077, 1093 (D. Md. 1995) (defendants "turned a blind eye to all indicia of infringement").

Courts consider continued infringement after notice of wrongdoing to be the most probative evidence supporting a finding of willfulness. *See Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1021 (7th Cir. 1991) ("evidence that notice had been afforded to the alleged infringer before the specific act found to have constituted infringement occurred is perhaps the most persuasive evidence of willfulness..."); *Compusource,* 115 F.Supp.2d at 809, 812 (defendant willfully infringed given its continued dealings in counterfeit items after receiving notice of infringement); *Taylor Made Golf Co. v. MJT Consulting Group*, 265 F.Supp. 2d 732, 748 (N.D. Tex. 2003) ("willfulness can be inferred from a Defendants' continued infringement after being given notice"). A letter informing the defendant of possible infringement "clearly provides notice." *Chi-Boy Music, Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir. 1991).

Here, the allegations set forth in the Amended Complaint – now deemed admitted – establish that Trendy Texas disregarded Plaintiffs' intellectual property rights and willfully infringed Plaintiffs' registered trademarks and copyrights. *See* Complaint ¶¶ 32-40; see also *TeleVideo Sys., Inc.*, 826 F.2d at 917.

5. <u>Plaintiffs Seek Willful Statutory Damages.</u>

AUS:0104637/00028:706508v1

The nature of Trendy Texas's infringement entitles Plaintiffs to an enhanced statutory damages award. *See* 17 U.S.C. § 504(c); 15 U.S.C. § 1117(c)(2). Because Trendy Texas failed to timely file a response to the Amended Complaint and because Plaintiffs have not had the benefit of discovery, Plaintiffs cannot provide this Court with either the specific amount of actual damages suffered by Plaintiffs or the amount of profit that Defendants have obtained from their infringing behavior. Therefore, under these circumstances, an award of statutory damages is particularly appropriate. *See Superior Form Builders v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488 (4th Cir. 1996) (noting that a plaintiff may recover statutory damages whether or not there is adequate evidence of actual damages), *cert. denied*, 519 U.S. 809, 136 L.Ed.2d 16, 117 S.Ct. 53; *Yurman Design, Inc. v. PAJ, Inc.*, 93 F.Supp.2d 449, 462 (S.D.N.Y. 2000) ("Statutory damages have been made available to plaintiffs in infringement actions precisely because of the difficulties inherent in proving actual damages and profits, as well as to encourage vigorous enforcement of the copyright laws"); *Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F.Supp. 2d 161, 165-66 (S.D.N.Y. 1999).

Moreover, even where there are *no* actual damages or only nominal damages, a plaintiff may nonetheless recover enhanced statutory damages. *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990); *Superior Form Builders*, 74 F.3d 488.

In *Peer Int'l*, the trial court awarded the plaintiff statutory damages of $4,000,000, which represented the maximum statutory damages allowable at the time for each of the eighty willful infringements of its copyrights.[1] *Peer Int'l*, 909 F.2d at 1336. The defendant claimed that the trial court abused its discretion by awarding such a high amount because the statutory damages award bore no relationship to the plaintiff's actual damages. The defendant further argued

---

[1] The statutory maximum at the time of the copyright infringement in *Peer Int'l* was $50,000 per infringement. *Peer Int'l*, 909 F.2d at 1336. Subsequent amendments to the statute have increased this amount to $150,000 per copyright infringement. 17 U.S.C. § 504(c)(2).

-22-

statutory damages should not provide a "windfall" where a plaintiff has suffered only nominal damages. *Id.* at 1336-1337. The court rejected this argument entirely, holding that a plaintiff may recover statutory damages "whether or not there is adequate evidence of the actual damages suffered by the plaintiff or of the profits reaped by defendants." *Id.* at 1337, *quoting Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984). The court further held that a court may impose liability within the statutory limits to sanction and vindicate the statutory policy of discouraging infringement even if for an uninjurious and unprofitable invasion of copyright. *Id.*, *quoting F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233, 97 L. Ed. 276, 73 S. Ct. 222 (1952).

Enhanced statutory damages are also appropriate when they will have a deterrent effect on defendants and others. *See, e.g., International Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 383 (7th Cir. 1988); *Fitzgerald Pub. Co v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986) ("[a]wards of statutory damages serve two purposes – compensatory and punitive"). To sanction Trendy Texas for its willful infringement and to deter it from future infringing behavior, Plaintiffs are entitled to seek statutory damages of up to $150,000 for each copyright willfully infringed, and up to $2,000,000 for each trademark willfully infringed. Therefore, Plaintiffs are requesting the maximum amount of statutory damages available for willful trademark infringement and copyright infringement. Accordingly, Plaintiffs seek statutory damages of $2,000,000 for each of its twelve trademarks at issue and $150,000 for each of the two copyrights at issue, for a total of $24,300,000.

Given Defendants' repeated infringement of Plaintiffs' intellectual property rights for financial gain, an award of statutory damages equal to the maximum amount available for willful

infringement is reasonable and appropriate. *See, e.g., Sellers,* 411 F.Supp. 2d at 921-22; *Logical Choice Computers,* 2001 WL 58950; *Compusource,* 115 F.Supp. 2d 800.

**B.    Trendy Texas Should Be Permanently Enjoined From Future Infringement Of Plaintiffs' Copyrights And Trademarks.**

Plaintiffs are also entitled to a permanent injunction to prevent any future infringement of Plaintiffs' copyrights and trademarks. The Copyright Act permits a court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." A permanent injunction should issue when copyright violations are shown. 17 U.S.C. § 502(a). *See Mai Sys. Corp. v. Peak Computer, Inc.,* 991 F.2d 511 (9th Cir. 1993); *National Football League v. McBee & Bruno's Inc.,* 792 F.2d 726, 729 (8th Cir. 1986) (if intentional and unauthorized use of copyrighted material is for commercial gain, a likelihood of future harm may be presumed); *Sega Enters.,* 948 F.Supp. at 940.

The Court also should issue a permanent injunction, pursuant to the Lanham Act, 15 U.S.C. § 1116, to prevent any future violation of Plaintiffs' trademarks. In *Polo Fashions, Inc. v. Dick Bruhn, Inc.,* 793 F.2d 1132 (9th Cir. 1986), in reversing the district court's denial of a permanent injunction against the retailer of shirts with the "Polo" logo not manufactured by Polo, the Court of Appeals stated:

> As the Supreme Court has noted in this area [of trademark infringement], a trademark plaintiff "entitled to relief, is entitled to effective relief and any doubt in respect of the extent thereof must be resolved in its favor as the innocent producer and against the [defendant], which has shown by its conduct that, it is not to be trusted.

*Id.,* at 1135, *citing Warner & Co. v. Eli Lilly & Co.,* 265 U.S. 526, 532 (1924). The court went on to find that a plaintiff need not introduce evidence of a threat of future harm since defendants had willfully violated Polo's trademark rights. "If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives Polo substantial protection of its trademark."

-24-

*Id.* at 1135-36; *Vuitton Et Fils, S.A. v. Crown Handbags*, 492 F.Supp. 1071, 1077 (S.D.N.Y. 1979), *aff'd w.o. opinion*, 622 F.2d 577 (2nd Cir. 1980) ("mere possibility of infringement is sufficient to warrant a permanent injunction").

Here, Trendy Texas has engaged in infringement of Plaintiffs' copyrights and trademarks in the past. Therefore, Trendy Texas clearly should be enjoined from any further infringements of Plaintiffs' copyrights and trademarks. Accordingly, Plaintiffs request that the Court enter the permanent injunction contained within the proposed Default Judgment submitted concurrently with this Motion.

## C. Plaintiffs Are Entitled To Their Attorneys' Fees And Costs.

The Copyright Act authorizes the Court to award costs and attorney's fees to the prevailing party. *See* 17 U.S.C. § 505. "[B]ecause section 505 is intended in part to encourage assertion of colorable copyright claims . . . fees are generally awarded to a prevailing plaintiff." *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 323 (9th Cir. 1987) (citations omitted); *Milene Music, Inc. v. Gotauco*, 551 F.Supp. 1288, 1297 (D. R.I. 1982). Under the Copyright Act, a court may "freely award fees" to the prevailing party as long as it "seeks to promote the Copyright Act's objectives." *Historical Research v. Cabral*, 80 F.3d 377, 378-79 (9th Cir. 1996) (citing *Fantasy Inc. v. Fogerty*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)). In *Fogarty*, the Supreme Court approved several nonexclusive factors for courts to consider, such as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 534 n.19, 114 S.Ct. at 1033 n.19. Willful infringement is not a prerequisite for an award of attorneys' fees under the Copyright Act, and attorneys' fees are generally awarded to a prevailing plaintiff as a matter of course. *In Design v. K-Mart Apparel Corp.*, 13 F. 3d 559, 567-68 (2d Cir. 1994); *Frank Music Corp. v. Metro-Goldwyn Mayer, Inc.*,

886 F.2d 1545, 1556 (9th Cir. 1989) (holding that a party may be awarded attorneys' fees simply by virtue of prevailing in a copyright action, and no other precondition need be met). A prevailing plaintiff is generally awarded its attorneys' fees is in order to further the purposes of the Copyright Act, which is designed to encourage plaintiffs to act to protect their copyrights. *In Design v. K-Mart Apparel Corp.*, 13 F. 3d at 567.

As to costs, courts have routinely held that the award of full costs is mandatory. *See Marvin Music Co. v. BHC Ltd. Partnership*, 830 F.Supp. 651, 657 (D. Mass 1993) (holding that there was "no reason to deviate from the normal practice of awarding full costs to the prevailing copyright owners . . ."); *Milene Music, Inc.*, 551 F.Supp. at 1297 ("In virtually all reported cases under the [Copyright] Act, costs have been awarded to the victor without discussion."); *Boz Scaggs Music v. KND Corp.*, 491 F.Supp. 908, 915 (D. Conn. 1980) (noting that the award of full costs in copyright infringement actions "is mandatory").

Just as Plaintiffs are entitled to recover their attorney's fees and costs under the Copyright Act, Plaintiffs are also entitled to its fees and costs under the Lanham Act. The Lanham Act provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Defendants' repeated infringement makes this an "exceptional" case under the Lanham Act. *See Playboy Enter., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1276 (9th Cir. 1982). Further, the Lanham Act provides that a prevailing party is entitled to recover the "costs of the action." 17 U.S.C. § 1117(a). A plaintiff may also recover its attorneys' fees and costs under the Lanham Act where the defendant has failed to formally appear. *See Philip Morris*, 219 F.R.D. at (even under Section 35(a) (15 U.S.C. § 1117(a)) for non-counterfeiting cases, a court may award attorneys' fees in "exceptional cases" and a case

AUS:0104637/00028:706508v1

may be exceptional "when Defendant disregards the proceedings and does not appear") (citing *Taylor Made Golf Co., Inc. v. Carsten Sports Ltd.*, 175 F.R.D. 658 (S.D. Cal. 1997)).

## CONCLUSION

Plaintiffs Coach, Inc. and Coach Services, Inc. respectfully request that the Court grant their Motion for Default Judgment and Permanent Injunction against Trendy Texas, LLC, and that the Court: (1) find Trendy Texas liable to Plaintiffs for an amount to be determined by the Court; and (2) enter a Permanent Injunction against Trendy Texas restraining it from engaging in future infringement of Plaintiffs' copyrights and trademarks.

Respectfully submitted,

John R. Nelson
Texas Bar No. 00797144
LOCKE LORD LLP
600 Congress Avenue, Suite 2200
Austin, Texas 78701
(512) 305-4868 Direct
(512) 305-4800 Fax
jnelson@lockelord.com

*Attorneys for Plaintiffs*

AUS:0104637/00028:706508v1

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of August, 2017, a true and correct copy of the foregoing document has been served via certified mail upon Trendy Texas, LLC through its owner:

Mahmood Baig
Owner
Trendy Texas, LLC
7171 Harwin Drive, Suite 103
Houston, TX 77036

John R. Nelson

AUS:0104637/00028:706508v1